UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALFONSO HESLOP,                                                    Case Number:

                Plaintiff,

       -v-                                                        **COMPLAINT**

NYC PUMPS PMF LLC a/k/a PUMPMAN,
NYC PUMPS REPAIR PM LLC a/k/a PUMPMAN,
DONALD DEVINE, MARTIN DEVEANY,
and NICHOLAS ARROYO,

                Defendants.
----------------------------------------------------------------X

Plaintiff, ALFONSO HESLOP ("Mr. Heslop" or the "Plaintiff") by and through his attorneys, THE LAW OFFICES OF WILLIAM CAFARO, as and for his Complaint against NYC PUMPS PMF LLC a/k/a PUMPMAN ("**NYC PMF**"), NYC PUMPS REPAIR PM LLC a/k/a PUMPMAN ("**NYC Repair**" and together with NYC PMF as "**NYC Pumps**"), DONALD DEVINE ("**Mr. Devine**"), MARTIN DEVEANEY ("**Mr. Deveaney**"), and NICHOLAS ARROYO ("**Arroyo**" and all together as "Defendants"), alleges upon knowledge to himself and his own actions and upon information and belief as to all other matters as follows:

## *NATURE OF CASE*

1. This action is brought pursuant to the Age Discrimination in Employment Act ("ADEA"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Section 1981 ("Section 1981"), the New York State Human Rights Law, New York Exec. Law § 290 et seq. ("NYSHRL"), and New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, as amended, including The Local Civil Rights Restoration Act, effective October 3, 2005, as well as Local Laws 1, 34, 35, 36, 37, 38, and 40 of 2016 ("NYCHRL") and other appropriate rules, regulations, statutes, and ordinances.

2. Plaintiff (a 66-year-old, Black male) claims that Defendants have discriminated against him on the basis of his age and race, have subjected him to an actionable hostile work environment, and have essentially terminated his employment. Plaintiff further contends that Defendants' discriminatory practices have been continuous and pervasive from the outset of his employment through the present. Additionally, Plaintiff alleges that Defendants have and continue retaliating against him for complaining about their unlawful conduct, even though Defendants know that various discrimination statutes expressly prohibit retaliation.

## JURISDICTION AND VENUE

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, insofar as it involves a statute of the United States, specifically, Section 1981. Plaintiff relies upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to the New York causes of action which form other bases for recovery upon the same factual nexus, specifically Plaintiff's NYSHRL and NYCHRL claims.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district.

## ADMINISTRATIVE PROCEDURES

4. Plaintiff intends to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendants for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). The allegations contained in intended Plaintiff's EEOC charge arise out of many (if not all) of the same facts alleged herein that pertain to his Section 1981 discrimination claims.

5. Immediately upon receiving the notice of right to sue from the EEOC and/or permission from the EEOC to remove the claims and bring them to Court, Plaintiff will promptly amend the complaint to include all federal claims contained in her EEOC charge.

## *PARTIES*

6. Plaintiff was a resident of the State of New York during the relevant time period.

7. At all times herein pertinent, Plaintiff was an "employee" and "person" within the meaning of Section 1981, NYSHRL, and NYCHRL.

8. At all times herein pertinent, **NYC PMF** was and is a foreign registered limited liability company authorized to do business in the state of New York with a principal place of business located at 1144 Utica Avenue, Brooklyn, NY 11203.

9. At all times herein pertinent, **NYC Repair** was and is a foreign registered limited liability company authorized to do business in the state of New York with a principal place of business located at 4909 Clarendon Road, Brooklyn, New York 11203.

10. At all times herein pertinent, **Mr. Devine** is a resident of the State of New Jersey and has/had a principal place of business located at 1144 Utica Avenue, Brooklyn, NY 11203 and/or 4909 Clarendon Road, Brooklyn, New York 11203.

11. At all times herein pertinent, **Mr. Deveaney** is a resident of the State of New Jersey has a principal place of business located at 1144 Utica Avenue, Brooklyn, NY 11203 and/or 4909 Clarendon Road, Brooklyn, New York 11203.

12. At all times herein pertinent, **Mr. Arroyo** was a resident of the State of New and has a principal place of business located at 1144 Utica Avenue, Brooklyn, NY 11203 and/or 4909 Clarendon Road, Brooklyn, New York 11203.

13. At all times herein pertinent, Defendants were employers under Section 1981 and NYSHRL and had 15 or more persons in their employ at all times relevant to this action.

## FACTS

### History of the PumpMan Business in NYC

14. For countless decades, **Federal Pump Corporation ("FPC")** manufactured pumps and pump systems in the NYC area.

15. For countless decades, **Federal Pump Repair Company ("FPR")** was a leading service and repair company servicing various makes and models of commercial, industrial and municipal water pumps and pump systems also in the NYC area.

16. **FPC** and **FPR (collectively as Federal Pump)** were owned and operated by common management.

17. All non-managerial employees of Federal Pump, who were part of a particular bargaining unit, were members of Union IUE-CWA Local 485 ("Local 485").

18. From in or about May 1989 through on or about December 20, 2017, Plaintiff worked for **FPC** as a welder.

19. In or about December 2017, Federal Pump sold its assets, including the Federal Pump trade name, to **NYC PMF**.

20. Following the sale, **NYC PMF** replaced the **FPC** operation located at 1144 Utica Avenue, Brooklyn, NY 11203.

21. Since in or about December 2017 through the present, **NYC PMF** has operated out of the Utica Avenue location doing the same work **FPC** did before selling the assets of Federal Pump.

22. Following the sale, **NYC Repair** replaced the **FPR** operation located at 4909 Clarendon Road, Brooklyn, New York 11203.

23. Since in or about December 2017 through the present, **NYC Repair** has operated out of the Clarendon Road location doing the same work **FPR** did before selling the assets of Federal Pump.

24. **NYC Pumps** (comprised of **NYC PMF** and **NYC Repair**) is a branch of the nationwide company known as "PumpMan." PumpMan's website, https://pumpman.com, provides an overview of most, if not all, of its business operations.

25. Since in or about December 2017 through the present, **NYC PMF** and **NYC Repair** have been owned and operated by common management.

26. Upon information and belief, funds taken in by each of the corporate Defendants are and were transferred to the other corporate Defendant, as necessary, according to availability, cash flow needs, minimization of tax liability, and for various other management and accounting purposes.

27. Upon information and belief, income received from each of the corporate Defendants was used to pay various expenses which should, according to generally accepted accounting principles, have been properly allocated to the other corporate Defendant, including, but not limited to employee payroll.

28. Upon information and belief, each of the corporate Defendants share and interchange employees, including Plaintiff, insofar as employees who are employed by one of the corporate Defendants are sent to work for the other when the need arises.

29. Since in or about December 2017, **NYC PMF** has been a party to a collective bargaining agreement ("PMF CBA") with Local 485. Thus, all of NYC PMF's non-managerial

employees, who are part of the collective bargaining unit, have been members of Local 485 since then.

30. Since in or about December 2017, **NYC Repair** has been a party to a separate collective bargaining agreement ("Repair CBA") with Local 485.  Thus, all of NYC Repair's non-managerial employees, who are part of the collective bargaining unit, have been members of Local 485 since then.

**Plaintiff's Employment**

31. Plaintiff worked for Defendants as a welder at **NYC PMF**'s welding Department from on or about December 21, 2017 through on or about July 16, 2019, during which time he faithfully and competently did his job.

32. During his employment, the Welding Department consisted of only two employees: Plaintiff and Oleksiy Nikishin ("Mr. Nikishin"), who is white, young, and less qualified than Plaintiff.

33. Due to Plaintiff's countless years of service, seniority, and experience, he was the head of the Welding Department.

**Defendants Continuously Show Favoritism Towards White, Less Qualified Employees**

34. Throughout his entire employment, Defendants intentionally showed favoritism towards younger, white employees, both in the manner that they treated them and in the benefits that they bestowed upon them.  As it pertains to the Plaintiff and his department, Defendants greatly favored Mr. Nikishin over him.

35. Throughout his entire employment, Defendants also marginalized Plaintiff and excluded him from important tasks and projects, even though he was the head of his department and thus the person they were required to consult with about all such work in his department.

36. Conversely, Defendants consulted and gave all desirable work to Mr. Nikishin, who was not the head of the department and was less qualified than Plaintiff to perform the work. From the outset, it was clear that Defendants' goal was to push Plaintiff out of the department and keep Mr. Nikishin.

37. Making their discriminatory animus more apparent, Defendants also deliberately offered all overtime hours in the Welding Department to Mr. Nikishin, without ever once offering overtime to Plaintiff or even allowing him to work it.

38. Overtime was, of course, coveted and sought out by hourly employees, like Plaintiff and Mr. Nikishin, because it meant they would receive additional compensation for that workweek.

39. Indeed, under the PMF CBA, overtime is to be paid at 1.5 times the employee's regular hourly rate for any work performed over 8 hours in a workday or for any work performed on the weekend.

**Plaintiff Repeatedly Complains about Defendants' Discriminatory Behavior**

40. From the start of his employment through April 2019, Plaintiff complained more than 20 times to supervisors and managers, including to some of the Defendants, that they were discriminating against him because of his age and race and showing favoritism towards Mr. Nikishin.

41. Plaintiff emphasized that he believed Defendants were trying to find a way to terminate his employment and keep Mr. Nikishin and other white, younger, less qualified employees.

42. Most times that Plaintiff complained, Defendants would simply ignore him. Other times they promised to look into it, but did nothing at all.

7

**Defendants Retaliate Against Plaintiff for Engaging in Protected Activity and Fabricate A Scheme to Pretextually Eliminate Him From His Job**

43. On or about May 9, 2019, Mr. Arroyo (a supervisor with considerable authority at both **NYC PMF** and **NYC Repair)** called Local 485 President, Humberto Leon, to advise him that **NYC Repair** had two job openings, one of which was for a field welding job. Mr. Arroyo told him that he would be posting the job openings on the Union bulletin board at **NYC PMF**.

44. President Leon advised Mr. Arroyo that, under the PMF CBA and Repair CBA, the bulletin board was for Union-use only and that he needed to give the job postings to Plaintiff, who was the Union shop steward at **NYC PMF**, to review and post. Mr. Arroyo promised that he would do so.

45. At the conclusion of that workday, Mr. Arroyo emailed Mr. Leon saying that the job openings had been posted five minutes earlier and attached a copy of the document.

46. However, Mr. Arroyo failed to explain why he posted the openings at the end of the workday, when no one would be around to see it.

47. More importantly, Mr. Arroyo deliberately failed to advise President Leon that he had personally posted the job opening on the Union bulletin board, as opposed to giving it to Plaintiff, in clear violation of the PMF CBA, the Repair CBA and their agreement from earlier that day.

48. **As discussed below, Mr. Arroyo hid this information from the Union and Plaintiff so that he would not apply for the job posting and Defendants could pretextually eliminate his position later on.**

49. Sometime between the last two weeks of May 2019 and first two weeks of June 2019, the Union met Defendants to discuss certain restructuring that was taking place at **NYC PMF** and **NYC Repair**, as well as discrimination claims lodged by Plaintiff.

8

50. President Leon, Plaintiff, and Jean Emile (Union shop stewart) appeared on behalf of the Union. Mr. Arroyo, Vincent (last name unknown at this time), and Bridget Morton (supervisor) appeared in person on behalf of the Defendants, while Mr. Deveaney (Head of Human Resources) participated in the meeting *via* speakerphone on behalf of the Defendants.

51. During that meeting, President Leon and Plaintiff accused Defendants of discriminating against Plaintiff on the basis of his age and race and trying to eliminate him from the Company.

52. President Leon stressed that Defendants would not be able to legally terminate or lay Plaintiff off because he had the most seniority at **NYC PMF** (due to his years of service and his being shop Stewart, which gave him "super seniority") and that there was abundant work for him to perform at the Company.

53. Upon hearing President Leon's statements and to preemptively justify their surreptitious plans to eliminate Plaintiff, Defendants zealously denied that Plaintiff was shop stewart at **NYC PMF** (a decision and subject matter over which the Union alone has authority) or that he was protected by super seniority.

54. In ensuing disagreements between both sides, Mr. Arroyo stated that Plaintiff was "too old" to keep working for Defendants in any capacity, a statement which was not corrected or disavowed by any of the Defendants in attendance.

55. President Leon immediately replied that Mr. Arroyo's remarks were ageist and utterly illegal and demanded that Plaintiff be left alone.

56. After this meeting, Plaintiff informed Defendants that he would be going on vacation to Jamaica (his home country) from Saturday, **June 29, 2019** through **Monday, July 15, 2019**. His request was approved.

57. On or about June 25, 2019 - three business days before his scheduled vacation - Defendants informed the Union and Plaintiff that they would be closing the Welding Department at **NYC PMF** effective July 15, 2019.

58. In subsequent correspondence between the Union and Defendants, Mr. Devaney stated that Plaintiff would be laid off, i.e., out of a job, effective July 15, 2019.

59. On July 15, 2019, Defendants closed the Welding Department at **NYC PMF**.

60. Plaintiff has not been called back to return to work ever since.

**Defendants Refuse to Turn Over Vital Information Requested by the Union Concerning Plaintiff's "Lay Off" and Mr. Nikishin's Employment**

61. On or about July 16, 2019, the Union, Plaintiff, Vito Stanisci (Supervisor of both **NYC PMF** and **NYC Repair**), and Ms. Morton met to discuss Plaintiff's "lay off" and the closing of the Welding Department. The Union and Plaintiff once against accused Defendants of discriminating against Plaintiff on the basis of his age and race and for engaging in protected activity.

62. They further accused the Company of fabricating a department closing and/or using the department closing as a pretext to unlawfully eliminate Plaintiff and keep Mr. Nikishin, who they undoubtedly assisted in securing a new job with **NYC Repair.**

63. Following this meeting, the Union made countless information requests concerning, among other things, Plaintiff's "lay off", the job posting which lead to Mr. Nikishin securing the new job at NYC Repair, and Mr. Nikishin's prior and current work with Defendants.

64. Although the Defendants furnished some of the requested information, they repeatedly refused to give vital information needed to verify the validity of their claims, in clear violation of the National Labor Relations Act, which requires the production of such information.

**Defendants Continue Retaliating Against Plaintiff**

65. Even though the Company claims that the Welding Department at **NYC PMF** was shut down on July 15, 2019 and that Mr. Nikishin was transferred to **NYC Repair** on June 17, 2019, Mr. Nikishin has and continues working at his old station in the Welding Department doing **NYC PMF** welding work.

66. Tellingly, since Plaintiff's "lay off," Defendants have not called him back to perform any work at the Company, despite the fact that the PMF CBA clearly requires Defendants to offer that work to him first and prohibits **NYC Repair** employees from performing bargaining unit work belonging to **NYC PMF**.

67. At the beginning of September 2019, Plaintiff's counsel contacted **all** Defendants - including Mr. Devine who is the owner of **NYC PMF** and **NYC Repair** and who has unbridled authority over both businesses - to inform them of their illegal activity and that Plaintiff would be initiating legal action if the matter was not swiftly resolved.

68. Despite being put on clear notice of their violations of the law, not only did they refuse to resolve this matter, they have continued their discriminatory scheme, to the detriment of Plaintiff's career and livelihood.

69. Defendants have treated (and continue to treat) Plaintiff unequally and less well than other employees because of his race and age and for engaging in protected activity, in violation of Section 1981, NYSHRL, and NYCHRL.

70. Employees outside Plaintiff's protected classes were treated more favorably than Plaintiff.

71. Defendants' discriminatory conduct have been severe, pervasive, and continuous as they have subjected Plaintiff to discriminatory acts on a recurring basis. This conduct has

been personally insulting, offensive and abusive to Plaintiff, and would be objectively insulting, offensive and abusive to others.

### FIRST CLAIM FOR RELEF AGAINST DEFENDANTS
*Race Discrimination Under Section 1981*

72. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

73. Defendants discriminated against Plaintiff on the basis of his race (Hispanic) in violation of Section 1981 by denying him the same terms and conditions available to non-Hispanic employees, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

74. Defendants discriminated against Plaintiff on the basis of his race, in violation of Section 1981, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, harassment of Plaintiff because of his race.

75. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

76. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

77. Defendants have acted with malice or reckless indifference to Plaintiff.

78. Therefore, Plaintiff is entitled to all remedies and relief afforded by Section 1981, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorney's fees and costs, as well as any and all injunctive relief.

### *SECOND CLAIM FOR RELEF AGAINST DEFENDANTS*
*Retaliation Under Section 1981*

79. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

80. Defendants have and continue to retaliate against Plaintiff because he complained (through himself and his attorney) about the unlawful discrimination and harassment to which he has and continues to be subject, in violation of Section 1981.

81. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

82. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

83. Defendants have acted with malice or reckless indifference to the Plaintiff.

84. Therefore, Plaintiff is entitled to all remedies and relief afforded by Section 1981, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorney's fees and costs, as well as any and all injunctive relief.

## THIRD CLAIM FOR RELEF AGAINST DEFENDANTS
*Race Discrimination under the NYSHRL*

85. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

86. Defendants discriminated against Plaintiff on the basis of his race (Black) in violation of NYSHRL by denying him the same terms and conditions available to non-Black employees, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

87. Defendants discriminated against Plaintiff on the basis of his race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, harassment of Plaintiff because of his race.

88. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

89. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

90. Defendants have acted with malice or reckless indifference to the Plaintiff.

91. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYSHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages, attorneys' fees and costs, as well as any and all injunctive relief.

### *FOURTH CLAIM FOR RELEF AGAINST DEFENDANTS*
*Age Discrimination under the NYSHRL*

92. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

93. Defendants discriminated against Plaintiff on the basis of his age in violation of NYSHRL by denying him the same terms and conditions available to younger employees, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

94. Defendants discriminated against Plaintiff on the basis of his age, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, harassment of Plaintiff because of his age.

95. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

96. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

97. Defendants have acted with malice or reckless indifference to the Plaintiff.

98. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYSHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorneys' fees and costs, as well as any and all injunctive relief.

### *FIFTH CLAIM FOR RELEF AGAINST DEFENDANTS*
*Retaliation under the NYSHRL*

99. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

100. Defendants have and continue to retaliate against Plaintiff because he complained (through himself and his attorney) about the unlawful discrimination and harassment to which he has and continues to be subject, in violation of NYSHRL.

101. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

102. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

103. Defendants have acted with malice or reckless indifference to the Plaintiff.

104. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYSHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorneys' fees and costs, as well as any and all injunctive relief.

### *SIXTH CLAIM FOR RELEF AGAINST DEFENDANTS*
*Race Discrimination under the NYCHRL*

105. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

106. Defendants discriminated against Plaintiff on the basis of his race (Black) in violation of NYCHRL by denying him the same terms and conditions available to non-Black

employees, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

107. Defendants discriminated against Plaintiff on the basis of his race, in violation of NYCHRL, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, harassment of Plaintiff because of his race.

108. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section NYCHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

109. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

110. Defendants have acted with malice or reckless indifference to the Plaintiff.

111. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYCHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages, and attorneys' fees and costs, as well as any and all injunctive relief.

### *SEVENTH CLAIM FOR RELEF AGAINST DEFENDANTS*
*Age Discrimination under the NYCHRL*

112. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

113. Defendants discriminated against Plaintiff on the basis of his age in violation of NYCHRL by denying him the same terms and conditions available to younger employees,

including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

114. Defendants discriminated against Plaintiff on the basis of his age, in violation of NYCHRL, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, harassment of Plaintiff because of his age.

115. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section NYCHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

116. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

117. Defendants have acted with malice or reckless indifference to the Plaintiff.

118. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYCHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorneys' fees and costs, as well as any and all injunctive relief.

### *EIGTH CLAIM FOR RELEF AGAINST DEFENDANTS*
*Retaliation under the NYCHRL*

119. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

120. Defendants have and continue to retaliate against Plaintiff because he complained (through himself and his attorney) about the unlawful discrimination and harassment to which he has and continues to be subject, in violation of NYCHRL.

121. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

122. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

123. Defendants have acted with malice or reckless indifference to the Plaintiff.

124. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYCHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages, and attorneys' fees and costs, as well as any and all injunctive relief.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff requests a judgment against the Defendants:

a. Declaring that the Defendants have violated the aforementioned statutes;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against any individual, including Plaintiff, for participating in this lawsuit in any form;

d. Awarding backpay;

e. Awarding future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of

retirement income, diminution in Plaintiff's prospective social security benefits which will be computed over the Plaintiff's prospective statistical life expectancy, and all other benefits the Plaintiff would have expected to earn during the Plaintiff's lifetime had it not been for Defendants' unlawful discrimination;

f. Awarding damages to the Plaintiff to make the Plaintiff whole for any economic losses suffered as a result of such unlawful employment practices;

g. Awarding statutory penalties;

h. Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering in an amount to be proven at trial;

i. Awarding Plaintiff punitive damages;

j. Awarding Plaintiff attorneys' fees and costs and expenses incurred in the prosecution of the action;

k. Awarding pre and post-judgment interest as provided by law;

l. Awarding Plaintiff such other and further relief as available under the statues;

m. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
      November 19, 2019

                                Respectfully submitted,
                                LAW OFFICES OF WILLIAM CAFARO

                                _/s/ Louis M. Leon_____
                                Louis M. Leon, Esq. (LL2057)
                                *Attorneys for Plaintiff*
                                108 West 39th Street, Ste. 602
                                New York, New York 10018
                                (212) 583-7400
                                LLeon@CafaroEsq.com